IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **HISCOX INSURANCE COMPANY INC,** | * | |
| | * | |
| *Plaintiff*, | * | |
| | * | |
| v. | * | Civil Case No: 1:25-cv-1946-JRR |
| | * | |
| **THE GLASS DOOR PROJECT, INC., et al.,** | * | |
| | * | |
| *Defendants.* | | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## REPORT AND RECOMMENDATION REGARDING
## PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT

This Report and Recommendation address Plaintiff Hiscox Insurance Company Inc.'s Motion for Default Judgment (ECF No. 20) (the "Motion"). United States District Judge Julie R. Rubin referred this matter to the undersigned on February 10, 2026, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302. *See* (ECF No. 21). The Motion is fully briefed (ECF No. 20), and the undersigned believes that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons that follow, I respectfully recommend that Plaintiff's Motion be granted.

I.   **BACKGROUND**

Plaintiff brought the instant lawsuit on June 17, 2025, which named as Defendants The Glass Door Project, Inc., Latonuia Jones (also known as Latonuia Knox), Glass Door Project Corporation, and Parris Commodore. (ECF No. 1). The Complaint seeks a declaration that there is no coverage available under a Professional Liability Policy and a Commercial General Liability Policy (together, the "Policy") as a result of a stabbing incident involving two residents of a Glass

Door facility. *Id.* at 14[1]; (ECF No. 1-2). Defendants provide "community-based mental health, substance abuse, and/or behavioral health services to individuals in Baltimore City and the State of Maryland." *See* (ECF No. 1-4 at 6). Defendant Jones "was an agent, servant, employee, manager, and/or owner of Defendant Glass Door Project, Inc. and Defendant Glass Door Project Corporation located at 4404 Ridgecroft Road in Baltimore City, Maryland." *Id.*

       *i.*     *The Policy*

The Policy at issue includes a Professional Liability portion, the "PL Coverage Part," and a General Liability Coverage Part, the "GL Coverage Part." (ECF No. 1 at 3). The Policy "has a $3 million each Occurrence and General Aggregate limit of liability under the GL Coverage Part, and a $1 million each Claim and Aggregate limit of liability for the PL Coverage Part, subject to a $5,000 Deductible for the PL Coverage Part only." *See id.*; (ECF No. 1-2). Under the GL Coverage Part, coverage for bodily injury and property damage includes the following provisions:

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.
>
> . . .
>
> b. This insurance applies to "bodily injury" and "property damage" only if:
>
>> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>>
>> (2) The "bodily injury" or "property damage" occurs during the policy period…

---

[1] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document. If there are none, the Court is referring to the page number of the PDF.

(GL Coverage Part, Section I, Coverage A, Subsections 1.a & 1.b, ECF No. 1-2 at 26), Moreover, Plaintiff asserts that (1) "we" means "the company providing this insurance," (2) "you" means the Named Insured (in this instance, Glass Door Project, Inc.); (3) "bodily injury" means "bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time," (4) "occurrence" means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions," (5) "suit" means a civil proceeding in which damages arising from a "bodily injury," "property damage," or "personal and advertising injury," to which the Policy applies are in controversy, and (6) "coverage territory" includes the United States of America. *See Id.*; (ECF No. 1-2 at 16).

The GL Coverage Part also includes a Professional Services Exclusion provision, which indicates the insurance does not apply to:

> "Bodily injury", "property damage" or "personal and advertising injury" caused by the rendering or failure to render any professional service. This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering or failure to render any professional service.

(Professional Services Endorsement, ECF No. 1-2 at 57). Similarly, there is a provision titled "Exclusion – Services Furnished by Health Care Providers," which indicates,

> With respect to any operation shown in the Schedule [Mental health counseling], this insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of: 1. The rendering or failure to render: a. Medical, surgical, dental, x-ray or nursing service, treatment, advice or instruction, or the related furnishing of food or beverages; [or] b. Any health or therapeutic service, treatment, advice or instruction.

(Exclusion – Services Furnished by Health Care Providers, ECF No. 1-2 at 70). Finally, Plaintiff alleges Endorsement No. 17 of the GL Coverage part (titled, "Exclusion – Counseling Services") provides that "[t]his insurance does not apply to "bodily injury", "property damage" or "personal

3

and advertising injury" arising out of advisory services or counseling with respect to such issues as mental health, crisis prevention, social services or drug and alcohol rehabilitation or similar subjects." *Id.* at 72.

> Turning to the PL Coverage part, Plaintiff asserts that it provides "in relevant part,"
>
> We shall pay on Your behalf Damages and Claim Expenses in excess of the Deductible resulting from any covered Claim that is first made against You during the Policy Period and reported to Us pursuant to the terms of the Policy for Wrongful Acts committed on or after the Retroactive Date.

*Id.* at 8. Taking each term in turn, "we" is afforded the same definition described above, and "you" means "any organization, employee, and under certain specified circumstances, any joint venture in which the Organization participates pursuant to written agreement and any Additional Insured." (ECF No. 1 at 7) (citing ECF No. 1-2 at 19). "Organization" means the named insured, in this case, Glass Door Project, Inc., and any of its subsidiaries. *Id.* The PL Coverage Part defines "Damages" as "a monetary judgment or monetary award that You are legally obligated to pay (including pre- or post-judgment interest) or a monetary settlement negotiated by Us with Your consent." *Id.* "Claim Expenses" means "the following that are incurred by Us or by You with our prior written consent":

> 1. all reasonable and necessary fees, costs and expenses (including the fees of attorneys and experts) incurred in the investigation, defense and appeal of a Claim; and
>
> 2. premiums on appeal bonds, attachment bonds or similar bond. Provided, however, We shall have no obligation to apply for or furnish any such bonds.
>
> Claim Expenses shall not mean and We shall not be obligated to pay:
>
> 1. salaries, wages or expenses other than Supplemental Payments; or
>
> 2. the defense of any criminal investigation, criminal grand jury proceeding, or criminal action.

4

*Id.* (citing PL Coverage Part, Definitions, Section VI.D., ECF No. 1-2 at 16) (emphasis omitted). "Claim" means "any written demand for Damages or for non-monetary relief. *Id.* The "Policy Period" means "the period of time set forth…[from] July 22, 2021 to July 22, 2022." *Id.* at 8-9. "Wrongful Acts" include "any actual or alleged breach of duty, negligent act, error, omission or Persona Injury committed by You in the performance of Your Professional Services." *Id.* at 9 (citing ECF No. 1-2 at 19). "Professional Services" includes "licensed marriage and family therapist services; and licensed mental health counselor services." *Id.* The "Retroactive Date" is July 1, 2020. *Id.*

The PL Coverage Part also contains an exclusion, known as the "Residential Treatment Facility Exclusion," which provides,

> This Policy does not apply to and We shall have no obligation to pay any Damages, Claim Expenses or Supplemental Payments for any Claim:
>
> …
>
> based upon or arising out of any actual or alleged operation of any residential treatment facilities.

*Id.* at 9-10 (quoting PL Coverage Part, Section III.AH.F, as amended by Endorsement 1, ECF No. 1-2 at 22). Finally, the PL Coverage Part includes a Notice of Potential Claims provision which indicates,

> If You first become aware during the Policy Period of any Wrongful Act that might be reasonably likely give rise to a covered Claim, You may give written notice to Us of such potential Claim during the Policy Period. Such notice must include to the fullest extent possible:
>
> 1. the identity of the potential claimant;
>
> 2. the identity of the person(s) who allegedly committed the Wrongful Act;
>
> 3. the date of the alleged Wrongful Act;
>
> 4. specific details of the alleged Wrongful Act; and
>
> 5. any written notice from the potential claimant describing the Wrongful Act.

5

> If such notice is accepted as a "potential Claim," then any actual Claim that is subsequently made shall be deemed to have been first made on the date such "potential Claim" was first reported to Us.
>
> Provided, however, You may not report "potential Claims" during any purchased Optional Extended Reporting Period.

*Id.* at 10. (quoting PL Coverage Part, Section III.B., ECF No. 1-2 at 9).

### ii. The March 22, 2022, Incident

Plaintiff alleges that on or about March 22, 2022, Defendant Commodore was stabbed by a resident named Darl Stokes at a Glass Door facility located at 4404 Ridgecroft Road in Baltimore City, Maryland (the "Incident"). *Id.* at 11. Defendant Glass Door "learned of the Incident on or about March 22, 2022, when it occurred." *Id.* Thereafter, "Glass Door provided [Plaintiff] notice of a potential claim regarding the Incident on March 23, 2022." *Id.* Plaintiff asserts that on September 25, 2023, Defendant Commodore's counsel sent a letter to Plaintiff demanding full policy limits to settle the matter. (ECF No. 1-2). Then, Plaintiff sent a letter indicating no coverage was available under the PL Coverage Part for the demand letter on November 29, 2023. *Id.* Plaintiff alleges on March 13, 2025, Defendant Commodore filed suit in the Circuit Court for Baltimore City, (the "Commodore Action").[2]

As set forth more particularly in the Demand Letter and Commodore Action, and incorporated by reference in Plaintiff's Complaint, Defendant Commodore clarified that in either December 2021 or January 2022, Defendant Commodore sought out services offered by Defendant Glass Door's 4404 Ridgecroft Road in Baltimore City, Maryland facility. (ECF No. 1-4 at 7). When Defendant Commodore entered the facility, Mr. Stokes was also a resident there. *Id.* Mr.

---

[2] Courts may take judicial notice of matters in the public record and publicly available information on state and federal government websites. *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *United States v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017). Here, the public record shows Case No. C-24-cv-25-002098, is a suit between *Commodore v. Glass Door Project, Inc., et al*.

Stokes was previously "released from prison after serving twenty (20) years for murder." (ECF No. 1-3 at 2). Both received services from Defendant Jones for mental health, substance abuse, and/or behavioral health services. (ECF No. 1-4 at 7). According to Defendant Commodore, Defendant Jones placed Mr. Stokes in his room because Mr. Stokes "did not get along with his prior roommate." *Id.* Shortly thereafter, he and Mr. Stokes "were involved in a physical altercation in which both [Defendant Commodore] and Mr. Stokes sustained minor physical injuries." *Id.* Afterwards, Defendant Commodore "asked Defendant Jones to move [Mr. Stokes] to another room for his safety and peace of mind," which Defendant Glass Door declined to do for unknown reasons. *Id.* Based on the physical altercation between the two men, Defendant Commodore alleged that Defendant Glass Door knew Mr. Stokes had a history of violence. *See id.* Nevertheless, "[Defendant Commodore] and Mr. Stokes remained roommates even after [Defendant Commodore's] request to be assigned to another room." *Id.* at 8. Then, on March 22, 2022, Defendant Commodore realized he was missing money and asked Mr. Stokes about it. *Id.* He left the room, and when he returned, Mr. Stokes "attacked him with a knife and began to stab him." *Id.* Defendant Commodore was ultimately stabbed eight times. (ECF No. 1-3 at 2). Based on the allegation that Defendant Glass Door knew Mr. Stokes had a history of violence and failed to protect Defendant Commodore from such violence, the Commodore Action ultimately asserts causes of action for negligence, negligent hiring and retention, and negligent supervision. (ECF No. 1-4 at 9, 11, 13).

On June 17, 2025, "[Plaintiff] sent a letter to the Glass Door defendants explaining that, while it remains of the view "that this matter does not trigger coverage under the Policy, it will nonetheless provide a defense to [them]…under a reservation of rights while seeking a declaratory judgment confirming no coverage is available." (ECF No. 1 at 14).

> *iii.*     *Procedural Background*

On July 24, 2025, Plaintiff served Glass Door Project, Inc. and Glass Door Project Corporation with a summons and complaint at their last known address located at 4404 Ridgecroft Road, Baltimore, Maryland 21206. (ECF Nos. 8, 9). Thereafter, Plaintiff filed a proof of service for Defendant Glass Door Project, Inc. and a proof of service for Defendant Glass Door Project Corporation on July 29, 2025. (ECF Nos. 8, 9). On July 27, 2025, Plaintiff served Ms. Jones with a Summons and Complaint at her last known address located at 2807 Bynum Overlook Drive, Abingdon, MD 21009. (ECF No. 10). Plaintiff filed a proof of service on August 4, 2025. *See id.* Defendants Glass Door Project Inc., Glass Door Project Corporation, and Ms. Jones have not responded to the Complaint, and Plaintiff sought an entry of Default under Rule 55(a), which the Clerk's office entered on September 22, 2025. (ECF Nos. 14, 16, 18).

**II.     LEGAL STANDARD**

Federal Rule of Civil Procedure 55 governs entries of default and default judgments. Rule 55(a) requires that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Where a plaintiff's claim is not "sum certain" or a "sum that can be made certain by computation," the plaintiff "must apply to the court for default judgment" under Rule 55(b)(2). Fed. R. Civ. P. 55(b)(1)–(2).

In determining whether to award a default judgment, the Court accepts as true the well pleaded factual allegations in the Complaint as to liability. *Entrepreneur Media, Inc. v. JMD Ent. Grp., LLC*, 958 F. Supp. 2d 588, 593 (D. Md. 2013) (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)). However, "[a] complaint that avers bare legal conclusions or naked assertion[s] devoid of further factual enhancement, is insufficient to award default

judgment." *Select Specialty Hosp. - Quad Cities, Inc. v. WH Administrators, Inc.*, No. CV PX-18-03586, 2020 WL 4569521, at *3 (D. Md. Aug. 7, 2020) (internal quotation marks omitted). The Court must also consider whether the unchallenged facts constitute a legitimate cause of action under Rule 55 because a party in default does not admit mere conclusions of law. *United States v. Redden*, No. 09-cv-2688-WDQ, 2010 WL 2651607, at *2 (D. Md. June 30, 2012) (citing *Ryan*, 253 F.3d at 790). Although the Fourth Circuit has a "strong policy that cases be decided on the merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), default judgment "is appropriate when the adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

Typically, if the Court determines that liability is established, the Court must then determine the appropriate amount of damages or other relief. *CGI Fin., Inc., v. Johnson*, No. 12-cv-1985-ELH, 2013 WL 1192353, at *1 (D. Md. Mar. 21, 2013). In this regard, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Where, as here, a plaintiff seeks declaratory relief, default judgment is proper when the complaint establishes a plaintiff's right to such relief. *Nautilus Ins. Co. v. REMAC Am., Inc.*, 956 F. Supp. 2d 674, 679 (D. Md. 2013).

### III.   ANALYSIS

Plaintiff filed a motion for default judgment as to Defendants The Glass Door Project, Inc., Glass Door Project Corporation, and Latonuia Jones.[3] (ECF No. 20). "[T]he interpretation of an insurance policy is governed by the same principles generally applicable to the construction of other contracts."  *Mitchell v. AARP*, 140 Md. App. 102, 116, 779 A.2d 1061 (2001); *see Connors*

---

[3] It appears that Defendant Commodore has not yet been served as no proof of service has been filed and Plaintiff has not moved for a default judgment against him.  *See* (ECF No. 20).

*v. Gov't Emps. Ins. Co.*, 442 Md. 466, 480, 113 A.3d 595 (2015); *Moscarillo v. Prof'l Risk Mgmt. Servs.*, *Inc.*, 398 Md. 529, 540, 921 A.2d 245 (2007). In such actions, "[t]he insured party bears the burden of proving that coverage exists." *Cordish Co., Inc. v. Affiliated FM Ins. Co.*, 573 F. Supp. 3d 977, 994 (D. Md. 2021). When "deciding the issue of coverage under an insurance policy, the primary principle of construction is to apply the terms of the insurance contract itself." *Universal Underwriters Ins. Co. v. Lowe*, 135 Md. App. 122, 137, 761 A.2d 997, 1005 (2000) (internal quotations omitted). Thus, the insurance policy and any endorsements "must be construed as a whole and 'the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution' must be examined." *United Servs. Auto. Ass'n v. Riley*, 393 Md. 55, 79, 899 A.2d 819 (2006) (quoting *Chantel Assocs. v. Mt. Vernon Fire Ins. Co.*, 338 Md. 131, 142, 656 A.2d 779 (1995)).

"The court bears responsibility for ascertaining the scope and limitations of an insurance policy." *Cordish Co., Inc.*, 573 F. Supp. 3d at 994. As Plaintiff points out, "Maryland courts have established a two-part inquiry for determining whether an insurer has a duty to defend its insured" in a tort action. *Nautilus Ins. Co. v. BSA Ltd. P'ship*, 602 F. Supp. 2d 641, 648 (D. Md. 2009). "First, the court must determine 'the coverage and ... the defenses under the terms and requirements of the insurance policy.'" *Id.* (quoting *St. Paul Fire & Marine Ins. Co. v. Pryseski*, 292 Md. 187, 438 A.2d 282 (1981)). This portion of the inquiry "focuses upon the language and requirements of the policy." *Pryseski*, 292 Md. at 438. The second portion of this inquiry requires the Court to determine whether the "allegations in the tort action potentially bring the tort claim within the policy's coverage." *Id.* If there is any doubt as to "whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in insured's

favor." *Id*. at 107 (quoting *U.S. Fid. & Guar. Co. v. Nat'l Paving Co.*, 228 Md. 40, 54, 178 A.2d 872 (1962)).  If an insurer has no duty to defend, it follows that there is no duty to indemnify. *Nautilus Ins. Co.*, 206 F. Supp. 2d at 681-82.

Turning to principles of construction, Maryland courts construe the insurance policy "as a whole to determine the intention of the parties" and to examine "the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution.  *Id.* at 648. Insurance policies are to be construed under the "ordinary principles of contract interpretation." *Megonnell v. United Servs. Auto. Ass'n*, 368 Md. 633, 655, 796 A.2d 758 (2002) (internal quotations marks omitted). Thus, the operative policy's language should be afforded the "usual, ordinary, and accepted meaning" that "a reasonably prudent layperson would attach to the term." *Bausch & Lomb Inc. v. Utica Mut. Ins. Co.*, 330 Md. 758, 779, 625 A.2d 1021 (1993).  Thus, "if no ambiguity in the terms of the insurance contract exist, a court has no alternative but to enforce those terms."  *Kendall v. Nationwide Ins. Co.,* 348 Md. 157, 171, 702 A.2d 767 (1997).

> **A.     The Well-Pleaded Allegations Set Forth in the Complaint Show Plaintiff has No Duty to Defend or Indemnify Glass Door Project, Inc., Glass Door Project Corporation, or Ms. Jones Under the Residential Treatment Facility Exclusion.**

As described in greater detail above, the PL Coverage Part includes an exclusion titled, the "Residential Treatment Facility Exclusion," which provides in pertinent part,

> This Policy does not apply to and We shall have no obligation to pay any Damages, Claim Expenses or Supplemental Payments for any Claim:
>
> …
>
> based upon or arising out of any actual or alleged operation of any residential treatment facilities.

(PL Coverage Part, Section III.AH.F, as amended by Endorsement 1, ECF No. 1-2 at 22).  The Court first considers the Policy's language and construes all doubts in Plaintiff's favor. *Pryseski*,

292 Md. at 438. Plaintiff correctly points out that the phrase, "arising out of" does not have a settled meaning in Maryland, nor has it been defined by the Policy. *Red Roof Inns, Inc. v. Scottsdale Ins. Co.*, 419 Fed. Appx. 325, 333 (4th Cir. 2011). That said, courts generally hold that a but for causal link or "a loose cause and result relationship" is sufficient to satisfy an insurance policy's "arising out of" requirement. *Id.*

Turning to whether the claim falls under the Policy's coverage, Plaintiff argues that because Defendant Commodore alleges he and Mr. Stokes resided at a Glass Door facility together, where they were receiving treatment for mental health, substance abuse, and/or behavioral health, the Commodore Action is a claim "based upon or arising out of any actual or alleged operation of any residential treatment facilities." Affording the words in the policy their "usual, ordinary, and accepted meaning," the Court finds Plaintiff's argument persuasive. *Bausch & Lomb Inc.*, 330 Md. at 779. Indeed, the Plaintiff (and the Commodore Action) alleges that Mr. Stokes attacked Defendant Commodore at the Glass Door facility where they resided and received treatment after Defendant Commodore requested to be moved because of a previous attack, and no one from Glass Door who was responsible for providing mental health services prevented such the attack in the course of administering mental health services and managing the facility. (ECF No. 1-4). Here, this is a sufficient "but for" or "loose cause and result relationship" to satisfy the Policy's requirement that any exclusion must "arise out of" the operation of any residential treatment facility, that is the decision to keep Mr. Stokes in the same room as Defendant Commodore despite their knowledge of Mr. Stoke's mental health and the physical violence between them. *Red Roof Inns, Inc.*, 419 Fed. Appx. at 333. Therefore, the Court is satisfied that this action has arisen out of the operation of a residential treatment facility. *Bausch & Lomb Inc.*, 330 Md. at 779.

Accordingly, Plaintiff is entitled to a declaration that it has no duty to defend or indemnify Glass Door Project Inc., Glass Door Project Corporation, or Ms. Jones in connection to the Commodore Action under the PL Coverage Part.

> **B.      The Well-Pleaded Allegation Show Plaintiff has No Duty to Defend or Indemnify Glass Door Project, Inc., Glass Door Project Corporation, or Ms. Jones Under the Residential Treatment Facility Exclusion of the GL Coverage.**

Plaintiff next asserts that several exclusions set forth in the GL Coverage part bar coverage as well. (ECF No. 20 at 18). It will be necessary only to address the first.

> First, the Professional Services Exclusion provides that no coverage applies to
>
> "Bodily injury", "property damage" or "personal and advertising injury" caused by the rendering or failure to render any professional service.
>
> This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering or failure to render any professional service.
>
> (Section I.2, as amended by Exclusion – Professional Services Endorsement, ECF No. 1-2

at 57).

As an initial matter, Plaintiff urges this Court to adopt an expansive definition of "professional services." (ECF No. 20 at 18). Plaintiff points out that "courts that have construed professional liability exclusion clauses . . . have adopted an expansive definition of the term 'professional service.'" *Bolton Partners Inv. Co. Grp., Inc. v. Travelers Indem. Co. of Am.*, No. CIV.A. RDB-05- 2724, 2007 WL 776675, at *7 (D. Md. Mar. 15, 2007) (internal citations omitted). The term "refers to any business activity conducted by the insured which involves specialized knowledge, labor, or skill, and is predominantly mental or intellectual as opposed to physical or manual in nature." *Id.* "In determining whether an action is a 'professional service,'

13


the courts look not to the title or character of the party performing the act, but to the act itself." *Id*. (internal quotations omitted).

While that much is true, *Bolton Partners Investment Consulting Group, Inc.* considered the term, "professional services" when the policy at issue there did "not specifically delineate which services are excluded." *Id*. Therefore, the Court construed "professional services" because the term's use was ambiguous. *Id*. No such scenario is presented here. In this case, "Professional Services" mean "only those services specified in Endorsement to this Policy as performed by or on behalf of an Organization for others for a fee or other compensation." (Clause VI, Definitions, ECF No. 1-2 at 18). Endorsement 1 defines Professional Servies as "licensed marriage and family therapist services" and "licensed mental health counselor services." (Endorsement 1, ECF No. 1-2 at 21). Considering that the parties included an unambiguous definition, and without any "indication that the parties intended to use words in the policy in a technical sense, they must be accorded their customary, ordinary, and accepted meaning." *Md. Cas. Co. v. Blackstone Intern. Ltd.*, 442 Md. 685, 695, 114 A.3d 676 (2015). Thus, the unambiguous language of the Policy controls, and adopting the expansive definition above would not be proper. *See Bolton Partners Inv. Co. Grp., Inc.*, 2007 WL 776675, at *7.

Having considered the Policy's language, the Court turns to whether the claim falls within scope of coverage. *Pryseski*, 292 Md. at 438. Here, Plaintiff argues,

> The Commodore Action and the Demand Letter are based upon or arising out of Glass Door, GDPC, and/or Jones's rendering of or failure to render professional services because they allege negligence in the provision of community-based health services, substantive abuse services, and/or behavioral health services; failure to ensure the safety and well-being of their residents; and failure to provide adequate assistance to their customers.

(ECF No. 20 at 20). The Court agrees. Based on the allegations in the Complaint, the decision to keep Mr. Stokes and Defendant Commodore in the same room after Mr. Commodore requested to

be moved based on Mr. Stoke's pattern of violence necessarily involved decisions about Mr. Stoke's mental health in a facility where both individuals sought such services. The nature of "mental health counselor services" clearly has a wider reach at a residential treatment facility than it would in a non-residential setting. *Bausch & Lomb Inc*, 330 Md. at 779. Here, the Demand Letter (ECF No. 1-3) and Commodore Action (ECF No. 1-4) allege "Glass Door was negligent in the operation of the mental health and behavioral services facility" because, among other things, it failed to properly assess Mr. Stoke's background, or "properly supervise its clients in order to avoid violent interactions between its' members." (ECF No. 1-3 at 2). This is precisely the kind of mental health counseling that would fall under the professional services definition in a community based residential facility like Glass Door. Moreover, the Commodore Action claims alleged negligence or other wrongdoing in the supervision, hiring, and employment by Glass Door. *See* (ECF No. 1-4). Therefore, the Court is satisfied that the Professional Services exclusion also bars coverage under the GL Coverage Part.

The Court is ultimately satisfied that the well-pleaded Complaint entitles Plaintiff to the relief sought against Defendants Glass Door Project, Inc., Glass Door Project Corporation, and Ms. Jones.

## IV.    CONCLUSION

Based on the foregoing analysis, the undersign recommends that the Court enter a declaration that Plaintiff has no duty to defend or indemnify Defendants Glass Door Project, Inc., Glass Door Project Corporation, or Ms. Jones under the PL Coverage Part and the GL Coverage Part in connection to the Commodore Action.

Dated: February 19, 2026                                                   /s/

J. Mark Coulson
United States Magistrate Judge